## UNITED STATES *v.* FINNELL.

APPEAL FROM THE COURT OF CLAIMS.

No. 523. Submitted February 28, 1902.—Decided April 21, 1902.

The District and Circuit Courts of the United States are always open for
the transaction of some business which may be transacted under the
orders of the judge in his absence, and on such transaction rest the plain-
tiff's claims in this case, which the court sustain as business which could
be transacted by the clerk in the absence of the judge, following the de-
partmental construction of the statutes.

Of course if that construction were obviously or clearly wrong it would be
the duty of the court to so adjudge; but if there simply be doubt as to
the soundness of that construction, the action of the Government in con-
formity with it for many years should not be overruled except for cogent
reasons.

The case is stated in the opinion of the court.

*Mr. Assistant Attorney General Pradt* and *Mr. Philip M.
Ashford* for appellants.

*Mr. Charles C. Lancaster* for appellee.

Mr. Justice Harlan delivered the opinion of the court.

The appellee was clerk of the District and Circuit Courts for
the Kentucky District from July 1, 1894, to June 30, 1898,
his office, during that period and previously, being in the city

of Covington, one of the places at which those courts were held. The District Judge resided in the city of Louisville, while the Circuit Judges resided in other States.

The clerk presented to the proper officers of the Treasury for payment his account for certain services rendered during the above period, amounting to $995.

The account was sworn to and approved as required by the act of February 22, 1875, which provides, among other things, that before "any account payable out of the money of the United States shall be allowed by any officer of the Treasury, in favor of clerks, marshals or district attorneys, the party claiming such account shall render the same, with the vouchers and items thereof, to a United States Circuit or District Court, and, in presence of the district attorney or his sworn assistant, whose presence shall be noted on the record, prove in open court, to the satisfaction of the court, by his own oath or that of other persons having knowledge of the facts, to be attached to such account, that the services therein charged have been actually and necessarily performed as therein stated; and that the disbursements charged have been fully paid in lawful money; and the court shall thereupon cause to be entered of record an order approving or disapproving the account, as may be according to law, and just." 18 Stat. 333, c. 95, § 1.

Payment of the account having been refused, this suit was brought against the United States, the petitioner averring that "his whole compensation, if said fees were added, would not exceed the maximum compensation of $7000 for any one year."

Judgment having been entered in favor of the plaintiff for the amount sued for, the Government has prosecuted this appeal.

The findings of fact upon which the judgment below was based were as follows:

"I. The claimant, Joseph C. Finnell, was clerk of the District and Circuit Courts of the United States for the District of Kentucky from July 1, 1894, to June 30, 1898, duly qualified and acting.

"II. During said period he entered orders, decrees and other proceedings of the court on 199 days, extending through said time. None of the judges of said courts were personally pres-

ent at the time of the entry of such orders, decrees and proceedings, but said orders, decrees and proceedings were transmitted to the claimant by mail by the different judges composing the courts of said district. Said orders, decrees and proceedings were endorsed: 'Enter this order' (signed by the judge); or, 'Enter this' (signed by the judge); or, 'Enter' (signed by the judge). For the purpose of entering said orders, decrees and other proceedings the claimant made the following entries on the journal for opening and adjourning court on the dates for which attendance is claimed: 'Court met: Present, Hon. John W. Barr, sitting as Circuit Judge' (or Judge Taft, or Judge Lurton, or whoever may have been the judge sending the order. Then follows the entry of the order or other proceedings of the court for that day) and, 'It is now ordered that the court stand adjourned until       .' The date to which adjournment was had was left blank and when another such order, decree or other proceeding was received to be entered said blank was filled by entering therein the date on which the same was received, and another entry, similar to the above, opening and adjourning the court to a blank date was made. The record containing the entries of the opening and adjourning of court, the certified presence of the judge, and the orders, decrees and other proceedings of the court was afterwards signed by the judge sending such orders, decrees and other proceedings to be entered as the record of the court for the days on which the same were respectively entered. The Exhibits A, B and C, attached to and made a part of these findings, are illustrative copies of the record of the court upon such days.

" The nature and character of business transacted on the days, on which court was opened and adjourned, as aforesaid, is best shown by the following statement of the subject-matter of said orders, decrees, and other proceedings entered as aforesaid on the days actually claimed for:

" Entry of order granting additional time to plead, 4 days.

" Entry of order directing drawing of jury by jury commissioners, 18 days.

" Entry of order granting restraining order, 5 days.

" Entering orders disposing of sundry demurrers and motions, 21 days.

"Entry of orders granting rule, 10 days.

"Entry of orders granting application for writ of certiorari, 4 days.

"Entry of orders granting petition for witnesses on behalf of the defendant at the cost of the United States, 7 days.

"Entry of orders approving report of receivers, authorizing compromise by receiver, instructions issued to receiver, and various other orders pertaining to the appointment and conduct of receivers, 33 days.

"Entry of orders and decrees finally disposing of cases, 17 days.

"Sundry entries of orders granting writs of possession, approving bond of clerk of court, granting leave to withdraw exhibits, granting leave to file intervening petition, ordering sale of property, confirming sale of property, determining the priorities of liens, continuing cases, and granting appeals, 80 days.

"III. Claimant made his account for said services as attendance on court when the same was opened and adjourned by order of the judge and while the same was actually in session and business actually transacted, which was verified and presented to the United States court for approval in the presence of the district attorney, and orders approving the same as being just and according to law were entered of record. Said accounts were then presented to the accounting officers of the Treasury Department for payment, and payment of fees as per diems in Finding IV was refused.

"IV. Item 1. Per diems for attendance on court on the days on which said orders, decrees and other proceedings were entered, 199 days, at $5 per day, $995.

"V. Charges for similar services have been made by the claimant in every account rendered since 1882, and were always allowed and paid by the accounting officers of the Treasury up to June 30, 1893."

By section 828 of the Revised Statutes, a clerk of a Circuit or District Court of the United States was allowed "five dollars a day for his attendance on the court while actually in session."

'This section was similar to one in the act of February 26, 1853, c. 80, 10 Stat. 161, 163. Under that act clerks were allowed five dollars a day for attendance only, whether business was transacted or not by the court. After many years had expired, Comptroller of the Treasury Durham held that interpretation of the statute to be erroneous, and ruled that the transaction of business was a condition precedent to the right to a per diem compensation for attendance, although the court may have been, in fact, regularly opened for business and awaiting the coming of suitors. But the Court of Claims held, in 1885, that the Comptroller was in error, and adjudged that within the meaning of section 828 the clerk was entitled to five dollars a day for his attendance on court even when no business was transacted. *Jones* v. *United States*, 21 C. Cl. 1.

The judgment of that court did not, however, put the matter at rest; for, by the Sundry Civil Appropriations Act of August 4, 1886, c. 902, it was provided that no part of the money appropriated *by that act* should "be used in payment of a per diem compensation to any clerk or marshal for attendance in court except for days when business is actually transacted in court, and when they attend under sections 583, 584, 671, 672 and 2013 of the Revised Statutes, which fact shall be certified in the approval of their accounts." 24 Stat. 222, 253. That act, by its terms, was temporary.

At the subsequent session of Congress the subject was again considered, and resulted in a permanent provision to be found in the Sundry Civil Appropriations Act of March 3, 1887, c. 362. By that act it was provided "that *hereafter* no part of the appropriations made for the payment of fees of United States marshals or clerks shall be used, etc., . . . nor shall *any part of any money appropriated* be used in payment of a per diem compensation to any attorney, clerk or marshal for attendance in court, except for days when the court is opened by the judge for business, *or* business is actually transacted in court, and when they attend under sections 583, 584, 671, 672 and 2013 of the Revised Statutes, which facts shall be certified in the approval of their accounts." 24 Stat. 509, 541.

The sections of the Revised Statutes referred to in the act of 1887 are as follows:

" § 583. If the judge of any District Court is unable to attend at the commencement of any regular, adjourned, or special term, the court may be adjourned by the marshal, by virtue of a written order directed to him by the judge, to the next regular term, or to any earlier day, as the order may direct.

" § 584. If the judge of any District Court, in Alabama, California, Georgia, Indiana, Iowa, Kentucky, North Carolina, Tennessee or West Virginia is not present at the time for opening the court, the clerk may open and adjourn the court from day to day for four days; and if the judge does not appear by two o'clock afternoon of the fourth day, the clerk shall adjourn the court to the next regular term. But this section is subject to the provisions of the preceding and next sections."

" § 671. If neither of the judges of a Circuit Court is present to open any session, the marshal may adjourn the court from day to day until a judge is present: *Provided*, That if neither of them attends before the close of the fourth day after the time appointed for the commencement of the session, the marshal may adjourn the court to the next regular term.

" § 672. If neither of the judges of a Circuit Court be present to open and adjourn any regular or adjourned or special session, either of them may, by a written order, directed alternatively to the marshal, and, in his absence, to the clerk, adjourn the court from time to time, as the case may require, to any time before the next regular term."

" § 2013. The Circuit Court, when opened by the judge as required in the two preceding sections, shall therefrom and thereafter, and up to and including the day following the day of election, be always open for the transaction of business under this Title, and the powers and jurisdiction hereby granted and conferred shall be exercised as well in vacation as in term time; and a judge sitting at chambers shall have the same powers and jurisdiction, including the power of keeping order and of punishing any contempt of his authority, as when sitting in court."

Section 2013 had reference to the functions of the Circuit Court in election matters, and has been repealed.

The account here in suit is not for the attendance of the

clerk under sections 583, 584, 671 and 672, but for attendance under sections 574 and 638, which are hereafter given in this opinion.

It will be observed that the act of 1887 recognizes the right of the clerk to a per diem compensation in two states of case, namely, " when the court is opened for business, *or* business is actually transacted in court."

What do those words mean ?  We are informed by the representatives of the Government that for nearly forty years prior to 1886 it had been the practice of its accounting officers to allow a per diem compensation to clerks for attendance, when court was opened by the judge and adjourned without transacting any business ; and that such practice had been sanctioned by an unbroken line of decisions in the Federal courts.  And it is suggested that the purpose of the act of 1886 was to break up that practice.  All this only serves to prove that Congress used the words found in the act of 1887 with full knowledge of the former practice, and of the change made, or supposed to be made, by the act of 1886.  It is clear that the words used, reasonably interpreted, indicate a purpose to allow the per diem compensation for attendance as well when the court was opened for business, whether any business was actually transacted or not, as when business was actually transacted in court.  It is said that no business could be lawfully transacted "in court" unless the judge was personally present.  We do not assent to that view.  It rests upon a construction which is too literal.  The services for which Finnell's account was rendered constituted business actually transacted in court, unless it be that a clerk could never enter any order unless the judge was, at the time, in the place, room or building where his court was ordinarily held.  But we cannot so adjudge.  There are many things that may be legally done by a clerk pursuant to the written order of a judge sent to him, and which, being done, may be fairly held to constitute business "actually transacted in court."  This much is to be implied from sections 574 and 638 of the Revised Statutes, which are as follows :

" § 574.  The District Courts, as courts of admiralty, and as courts of equity, so far as equity jurisdiction has been conferred

upon them, shall be deemed always open, for the purposes of filing any pleading, of issuing and returning mesne and final process, and of making and directing all interlocutory motions, orders, rules and other proceedings, preparatory to the hearing upon their merits of all causes pending therein. And any District Judge may, upon reasonable notice to the parties, make, and direct and award, at chambers, or in the clerk's office, and in vacation as well as in term, all such process, commissions, orders, rules and other proceedings, whenever the same are not grantable of course, according to the rules and practice of the court."

" § 638. The Circuit Courts, as courts of equity, shall be deemed always open for the purpose of filing any pleading, of issuing and returning mesne and final process, and of making and directing all interlocutory motions, orders, rules, and other proceedings, preparatory to the hearing upon their merits of all causes pending therein. And any judge of a Circuit Court may, upon reasonable notice to the parties, make, and direct and award, at chambers or in the clerk's office, and in vacation as well as in term, all such process, commissions, orders, rules and other proceedings, whenever the same are not grantable of course, according to the rules and practice of the court."

As will be seen from those sections, the District and Circuit Courts of the United States are always open for the transaction of certain kinds of business which, we think, may be transacted under the orders of the judge, who may at the time be absent from the place, room or building in which the court is held. The business transacted by the appellee was such as could be transacted by the clerk under the orders of the judge. It is too narrow an interpretation of the statute to hold that such business was not actually transacted in court. This whole subject was carefully considered and the statutes relating to it fully analyzed by Judge Baker in *Butler* v. *United States*, 87 Fed. Rep. 655.

These views are justified by long practice in the Department, and upon that we may properly rest our affirmance of the judgment of the Court of Claims. It is found as a fact that the present appellee, in every account rendered by him since 1882,

has charged for services similar to those set out in the account here in suit, and such accounts were uniformly allowed and paid up to June 30, 1893. And on his account for the period from January 1, 1892 to June 30, 1894, he obtained judgment in the Court of Claims, which judgment was paid—no appeal having been prosecuted by the United States. *Finnell* v. *United States*, 32 C. Cl. 634. It thus appears that the Government has for many years construed the statute of 1887 as meaning what we have said it may fairly be interpreted to mean, and has settled and closed the accounts of clerks upon the basis of such construction. If the construction thus acted upon by accounting officers for so many years should be overthrown, we apprehend that much confusion might arise. Of course, if the departmental construction of the statute in question were obviously or clearly wrong, it would be the duty of the court to so adjudge. *United States* v. *Graham,* 110 U. S. 219; *Wisconsin C. R'd Co.* v. *United States,* 164 U. S. 190. But if there simply be doubt as to the soundness of that construction—and that is the utmost that can be asserted by the Government—the action during many years of the department charged with the execution of the statute should be respected, and not overruled except for cogent reasons. *Edwards* v. *Darby,* 12 Wheat. 206, 210; *United States* v. *Philbrick,* 120 U. S. 52, 59; *United States* v. *Johnston,* 124 U. S. 236, 253; *United States* v. *Alabama G. S. R'd Co.,* 142 U. S. 615, 621. Congress can enact such legislation as may be necessary to change the existing practice, if it deems that course conducive to the public interests.

The judgment of the Court of Claims is

*Affirmed.*

Mr. Justice Gray took no part in this decision.

Mr. Justice Brown, with whom concurred Mr. Justice White and Mr. Justice Peckham, dissenting.

From the passage of the act of 1791, fixing the compensation of officers of the courts of the United States, the subject of

fees for attendance upon the Circuit and District Courts appears to have been one of constant dispute between the officers on one hand, who naturally seek a construction of the fee bill favorable to them, and the Treasury officials upon the other, whose duty it is to supervise and pass upon the accounts of these officers. A statement of some, although by no means all, the acts of Congress upon this subject may aid in the solution of these difficulties. The earliest is that of March 3, 1791, 1 Stat. 216, wherein there was allowed " to the clerk of the District Court, for attending in the District or Circuit Court, five dollars per day." The act, however, was made temporary, and at the next session, May 8, 1792, 1 Stat. 277, certain changes were made, though none in the matter of attendance.

The law upon the subject of attendance was apparently not changed until April 18, 1814, 3 Stat. 133, when it was provided, under "an act to lessen the compensation" of such officers, that there should not be allowed or paid to the clerk of the Circuit or District Courts of the United States in Massachusetts, Rhode Island, Connecticut, the Southern District of New York, or Pennsylvania, "any daily compensation for attending on the said courts." Why this discrimination was made we have no means of knowing, but the act was repealed March 8, 1824. 4 Stat. 8. No important change was made in the law until 1842, when in the Civil and Diplomatic bill of May 18, 5 Stat. 475, 484, it was provided that no per diem compensation should be paid to clerks for attendance upon the Circuit or District Courts " while sitting for the transaction of business under the bankrupt law merely, or for any portion of the time during which either of said courts may be held open, or in session, by the authority conferred in that law. . . . And no per diem or other allowance shall be made to any such officer for attendance at rule days of the Circuit or District Courts," or for more than one per diem while both courts are in session.

But even before this act of 1842 was passed, it had been held by Mr. Justice Story in *United States* v. *Cogswell*, 3 Sumn. 204, which involved the validity of marshal's charges for attendance upon rule days, that as the marshal did not either

travel to or attend these rule days at the clerk's office, his claim was for a constructive travel and attendance; " but we are of opinion that this charge, whatever might be its validity, if the marshal had actually traveled and attended at these rules, is, under the circumstances, wholly inadmissible. To justify the charge an actual travel and attendance are, in our judgment, indispensable.".

By act of February 26, 1853, 10 Stat. 161, R. S. sec. 828, the whole subject of fees was revised, and an attendance fee allowed to the clerk of $5 per day for his attendance on the court " while actually in session." By that act the words ".while actually in session" were first introduced into the law. It is evident that some change was contemplated by the use of these words. For some purposes, notably in admiralty and equity cases, (R. S. §§ 574, 638,) the court may be deemed to be sitting when a judge is present upon a rule day, or makes an order which can only be made by the court; but, as we shall show hereafter, no attendance was contemplated on these days, at least in the absence of the judge.

The words " actually in session," found in the act of 1853, are emphasized by the sundry civil appropriation act of March 3, 1887, 24 Stat. 509, 541, wherein it is enacted as follows: That hereafter no part " of any money appropriated (shall) be used in payment of a per diem compensation to any attorney, clerk or marshal for attendance in court, except for days when the court is open (opened) by the judge for business, or business is actually transacted in court, and when they attend under sections 583, 584, 671, 672 and 2013 of the Revised Statutes, which fact shall be certified in the approval of their accounts." The special sections here mentioned and reproduced in full in the opinion of the court may be dismissed from consideration, as, with the exception of section 2013, since repealed, they relate to cases where there is no judge present at the opening of the term, when special authority is given to the clerk or marshal to adjourn the court from day to day until a judge is present. As no claim is made in the case under consideration for attendance under these sections, they are only important here as indicating the will of Congress that neither the clerk nor the

marshal, should have an unlimited discretion in opening the court in the absence of the judge, and requiring a special authority for that purpose. These sections undoubtedly contemplate a special exigency, to prevent a lapse of the term, which might follow from the absence of the judge, and to allow the court to be adjourned for a limited number of days. In two of these sections (584 and 671) there is a provision that, if the judge does not attend before the close of the fourth day, the court shall be adjourned until the next regular term. We have already held in the case of *United States* v. *Pitman*, 147 U. S. 669, that the officers are entitled to per diem fees for attendance under these sections, the same as if the judge were present and business were transacted.

By Rev. Stat. sec. 828, under which this claim is made by the petitioner, the court must have been "actually in session," and by the act of 1887 the court must have been opened by the judge for business, or business must have been actually transacted in court. There is no conflict between these acts, since, in order that the court be opened *by the judge* for business, it must be "actually in session," and if business be actually transacted *in court*, the court must be opened for the transaction of such business. In either case the court must have been actually opened *by the judge* or actually in session, which amounts to the same thing. As the petitioner bases his claim upon section 828, we shall inquire, first, when the court is *actually in session*. It is certainly not in session upon rule days, since, by Rev. Stat. section 831, "no per diem or other allowance shall be made . . . for attendance at rule days of a District or Circuit Court." We are then remitted to the real question in this case: When is a court actually in session, for we agree entirely in the opinion of the court that if the court be opened by the judge in person, and no business is transacted, the per diem compensation is still payable.

We had supposed the law to be that no court could be in session without the presence of a judge, and that the sections above cited from the opinion of the court in this case (583, 584, 671, 672,) allow an attendance to be charged, not because the court is actually in session, but to prevent a lapse of the term, when

the officers are supposed to be present and in readiness, should the judge appear. Bouvier says (Law Dict.) in giving a definition of the word " court" and the different styles of court, " that the one common and essential feature in all courts is a judge or judges—so essential, indeed, that they are even called *the court* as distinguished from the accessory and subordinate officers." So, too, in Bacon's Abridgment, a court is defined as an incorporeal political being, which requires for its existence the presence of the judges.

Thus in *State* v. *Judges*, 32 La. Ann. 1261, it is said : " The court is an incorporeal political being, which requires for its existence *the presence of the judges*, or of a competent number of them, and a clerk or a prothonotary, at the time during which and at the place where it is by law authorized to be held, and the performance of some public act indicative of a design to perform the functions of a court." A similar definition is given in the *Lawyers' Tax Cases*, 8 Heisk. 650. So in *Schoultz* v. *McPheeters*, 79 Ind. 376, discussing the powers of a master commissioner, the court is said to be " a tribunal organized for the purpose of administering justice, and presided over by a judge or judges." So a court is defined in *Mason* v. *Woerner*, 18 Mo. 570, to be a tribunal established for the public administration of justice, and composed of *one or more judges*, who sit for that purpose at fixed times and places, attended by the proper officers. And in *White County* v. *Gwin*, 136 Ind. 562, a court is defined as consisting of persons, officially assembled at a time and place fixed by law for the administration of justice, although a judge alone does not constitute a court. *Gold* v. *Vermont Central Railroad Co.*, 19 Vt. 478. But the presence of a judge is indispensable. *Hobart* v. *Hobart*, 45 Iowa, 503 ; *Levey* v. *Bigelow*, 6 Ind. App. 677 ; *Michigan Central R. R.* v. *Northern Indiana R. R.*, 3 Ind. 245.

In *Davis* v. *Township of Delaware*, 41 N. J. Law, 55, where the question arose as to the validity of a verdict taken by a crier in the absence of the judge and clerk, it was held that the verdict so taken was entirely invalid. " It seems a profitless labor to discuss so obvious a proposition." " No verdict therefore is valid unless given openly in court." It was held, how-

ever, in that case that the record of the court, showing the verdict of the jury to have been returned into the court, imported absolute verity.

So, too, in *In re Terrill, Petitioner*, 52 Kan. 29.    This was a writ of *habeas corpus* in which the prisoner, convicted of murder, claimed his release, because his trial was had at a time not authorized by law.    It appears that the judge was not present at the time and place when the term should have begun, nor for several days afterwards, and after several adjournments the clerk attempted to adjourn the court, until a later day, when the judge appeared and the prisoner was tried.    It was held that the failure of the judge to appear and open court upon the day appointed resulted in the loss of the term, and that the proceedings were absolutely void.    Said the court: "There is ample power in a court which has been regularly convened to adjourn to a future time, provided it be not beyond the term; but in the absence of a statute authorizing it, the clerk or other ministerial officer cannot act for the judge in either opening or adjourning court.    The clerk is a ministerial officer, and, without statutory authority, can exercise no judicial functions.    The opening, holding and adjournment of court are the exercise of judicial power to be performed by the court.    To perform the functions of a court, the presence of the officers constituting the court is necessary, and they must be present at the time and place appointed by law.  .  .  .  'To give existence to a court, then, its officers and the time and place of holding it, must be such as are prescribed by law.'   *Hobart* v. *Hobart*, 45 Iowa, 503.    There being no authority in law for the clerk to open and adjourn the court, the consequence of the failure of the judge to appear upon the day appointed for holding court was the loss of the term."

The citation of these authorities, however, appears to be quite unnecessary in view of the express provision of the act of 1887, that no fees for attendance in court shall be payable except for days when the court is opened by the judge for business.

The exhibits to which reference was made in the findings of fact are in the following form:

"Exhibit A.

"United States Circuit Court, District of Kentucky.

"May term, Monday, October 15th, A. D. 1894.

"Court met. Present: Hon. ——— ———, Circuit (or District) Judge.

"Julius C. Lang, Admr.,
        *vs.*
The Ches. & Ohio R. R. Co. et al.

"This cause coming on to be heard upon the motion of the Chesapeake and Ohio Railway Company for writ of certiorari and for a rehearing upon the motion to remand, the court having considered said motion and the affidavit filed herein, and the original petition for removal herein having been exhibited to the court, and being now duly advised, it is ordered that the clerk of the Kenton Circuit Court at Independence, Ky., be, and he hereby is, directed and ordered to make and transmit to the clerk of the United States Circuit Court for the District of Kentucky, at Covington, Kentucky, a true and correct transcript of the papers and proceedings in this case. The order remanding the case is now set aside and a rehearing of the motion to remand is hereby granted and is set for Saturday, October 20th, A. D. 1894, at 10 o'clock A. M. in chambers, at Cincinnati, Ohio.

"It is now ordered that court stand adjourned until Friday, November 2nd, A. D. 1894."

(The others are in form like unto this.)

It will thus be seen that, while the form of the journal entry showed an exact compliance with the law, the findings of fact show that it was a mere form, and that the facts found by the court were wholly inconsistent with the proceedings as they appear upon the journal, and were presented to the accounting officers. The form shows that the court met. It did not meet. That the circuit or district judge was present. He was not present. That a certain cause in each case came on to be heard and that an order was made in such cause, none of which took place at the time or place indicated; but the order was made

and transmitted by mail to the clerk. The final entry is that the court stands adjourned until a definite day, when the actual fact was that the day to which adjournment was made was left blank, and when another such order, decree or proceeding was received to be entered, such blank was filled with the date on which it was received, and another entry similar to the above, opening and adjourning the court to a blank day, was made. From the nature and character of business transacted on the days on which the court was opened and adjourned as aforesaid, it appears that with scarcely an exception they were orders which might have been made and which in fact were made in chambers. While the judge in each case directed the order to be entered, he did not direct the court to be opened for that purpose.

Now, while as before stated, if the court be properly opened, no business need be done to entitle the officers to their attendance fees, and when authority to do so is given by statute, the clerk or marshal may open the court and adjourn it, we know of no authority under which a clerk may open court at his own will, when he may have some order to enter; nor do we know of any authority under which even a judge may open court without his personal presence, unless specially authorized to do so by statute. Under the practice pursued in this case the court might be opened every day in the year, provided some excuse be found in the shape of an order signed by a judge, though the work actually done in court might not have occupied ten days during the entire year.

The opening of a court is a solemn judicial act, and must be performed by the judge in person, unless special authority is given by statute for its performance by a subordinate officer No such authority is found in this case. It is true that in *United States* v. *Pitman*, 147 U. S. 669, it was held that the officers were entitled to their attendance while waiting for the judge to appear. We said in that case that "the court should be deemed actually in session within the meaning of the law, not only when the judge is present in person, but when, *in obedience to an order of the judge directing its adjournment to a certain day*, the officers are present upon that day, and the

journal is opened by the clerk, and the court is adjourned to another day by further direction of the judge." This, however, was said with particular reference to the case under consideration, and is no authority for the practice pursued in this case, since the court was not opened in obedience to any order from the judge.

Great stress is laid in the opinion of the court upon the practice of the departments in this connection, and upon the finding that the present appellee in every account rendered by him since 1882 has charged for services similar to those set out in the account here in suit, and that such accounts were uniformly allowed and paid up to June 30, 1893. An inspection of the entries in this case will show the weight to be attached to this practice of the departments. When it appears upon the journal that the court met, that the judge was present, that an order was made in court, and that the court adjourned to a specific date, how are the accounting officers of the Treasury to know that such was not the fact? The practice of the departments to pay these bills might have continued for a century without anything to show that they were apprised of the actual facts appearing in the findings, and no inference can be drawn from such practice. Had it appeared that in such cases the facts set forth in these findings had been called to the attention of the accounting officers the rule would be different; but we fail to see how the practice could afford any justification for these charges. A practice like this is liable to throw one's notions of differences of form and substance into sad confusion. Fictions in pleading were long, and still are, tolerated in many cases, but we know of no definition of the word "fiction" which authorizes journal entries like this, based upon the findings shown in this case. Had the facts been actually stated in connection with these entries, we imagine the practice of the department would have been so quickly changed that no argument based upon it could have been made.

Petitioner in his brief claims his attendance under sections 574 and 638, fully set forth in the opinion of the court, which, construed together, declare that courts of admiralty and equity "shall be deemed always open" for the purpose of filing any

pleading, issuing and returning process, and making and directing interlocutory motions, orders, etc., preparatory to the hearing upon their merits of all cases pending therein. No claim under these sections, however, is made in the petition, wherein the petitioner relies alone upon section 828 for attendance when the court is "actually in session."

There are, however, so many other answers to his claim under sections 574 and 638 that no elaborate discussion of them is necessary. (1) These three sections, 574, 638 and 828, are all taken from the Revised Statutes, and must be construed together as if they constituted parts of one act, as they really do. Nothing is said about attendance in the first two of these sections, and all the orders are such as are usually made at chambers. Both sections provide upon their face that the proceedings therein authorized may be made at chambers, or in the clerk's office, and in vacation as well as in term; but in a separate and distinct section, 828, providing for clerk's fees, his fees for attendance are limited to such as are earned while the court "is actually in session." Of course, if there be any conflict between these sections the later rules, but in addition to that it is inconceivable that Congress, while providing specially for attendance while the court is in actual session, should throw the door wide open in sections 574 and 638 to a charge for attendance upon every day when the judge may happen to make an order, whether the court be actually in session or not. All that is meant by sections 574 and 638 is a recognition of the old custom that courts of admiralty and equity are presumed to be always open for incidental purposes, a custom as old as the very existence of these courts. (2) The list of the orders actually made by the judge, for the entry of which the clerk claims attendance in this case, shows that none of them were in admiralty cases, and comparatively few in equity cases. The great bulk were in common law cases. The claim under these sections was evidently an afterthought. (3) If these sections be construed as opening the door for an attendance fee each time an order was made, then they were clearly repealed by the act of 1887, under which the clerk has a right to compensation only when the court is opened *by the judge* for business, or

business is actually transacted *in court*, and when they attend under certain sections, in which sections 574 and 638 are *not* included.

For these reasons I am compelled to dissent from the opinion of the court in this case.

I am instructed to say that MR. JUSTICE WHITE and MR. JUSTICE PECKHAM concur in this dissent.

MR. JUSTICE GRAY took no part in the decision of this case.