# UNITED STATES EX REL. KREH v. INGHAM.

---

LICENSE TAXES; STATUTES; INSURANCE; MANDAMUS.

1. A statute providing for an occupation license such as that of an insurance solicitor, which occupation is subject only to reasonable regulation, should not be so construed as to abridge or curtail the right to pursue the occupation; unless the intent of the legislature so to do clearly appears, it will not be presumed. (Following *United States ex rel. Daly* v. *Macfarland,* 28 App. D. C. 552, and *Drake* v. *United States,* 30 App. D. C. 312.)

2. No power is conferred upon the Superintendent of Insurance by the insurance laws of the District of Columbia, to make and enforce an interpretation of such laws, such power being a judicial one, to be exercised by the courts alone. (Following *Drake* v. *United States,* supra.)

3. While an executive contemporaneous construction of a statute will be usually followed where the language of the statute is not clear or admits of two reasonable interpretations (following *United States ex rel. Daly* v. *Macfarland,* supra), this rule of interpretation does not preclude an inquiry by the court as to the correctness of a custom of a department when that custom is inconsistent with the language and object of the statute.

4. The object of insurance laws, providing for licenses for agents, brokers, and solicitors, is more for the protection of the public than to provide revenue. The requirement that a license shall be obtained protects the public against irresponsible persons who are not really authorized to represent anyone.

5. Mandamus will lie to compel the Superintendent of Insurance of this District to accept the prescribed fee tendered by the relator, an insurance solicitor, and to issue him a license to act as such for a specified insurance company, although the relator has already received a license to act as solicitor for another company. (Construing secs. 654 and 655, D. C. Code [31 Stat. at L. 1292, 1293,

chap. 854], and citing *United States ex rel. Daly* v. *Macfarland* and *Drake* v. *United States*, supra.)

No. 2368. Submitted February 6, 1912. Decided March 4, 1912.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia dismissing a petition for a writ of mandamus to compel the respondent, the Superintendent of Insurance of the District of Columbia, to issue him a solicitor's license. *Reversed.*

The facts are stated in the opinion.

· *Mr. F. S. Perry* and *Mr. Harry Peyton* for the appellant.

*Mr. E. H. Thomas*, Corporation Counsel, and *Mr. F. H. Stephen*, Assistant, for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Appellant, John E. Kreh, Jr., by this appeal, seeks a review of a judgment in the supreme court of the District dismissing his petition for a writ of mandamus to compel the issuance to him by George W. Ingham, the Superintendent of Insurance of the District of an insurance solicitor's license.

The sole question presented is whether more than one solicitor's license may be issued to one person, under the provisions of sec. 655 of the Code [31 Stat. at L. 1293, chap. 854]; in other words, whether it was intended by that section to limit and restrict the activities of an insurance solicitor to a single company. The calling of such a solicitor being lawful and subject only to reasonable regulation, the intent of the lawmaking power to abridge or curtail the exercise of the right to pursue that calling ought clearly to appear, and not be presumed. *United States ex rel. Daly* v. *Macfarland*, 28 App. D. C. 552; *Drake* v. *United States*, 30 App. D. C. 312.

Sec. 654 of the Code [31 Stat. at L. 1292, chap. 854] provides for the issuance of a general insurance license to an agent

or broker upon the payment of the sum of $50. The holder of such a license may represent any number of companies, provided, of course, such companies are authorized to do business in this jurisdiction. Sec. 655 provides, inter alia, "that any insurance company or agent licensed to do business in the District of Columbia may employ solicitors," and that the license fee to be paid for each solicitor so employed shall be five dollars per year, each license to have printed on its face the words "Insurance Solicitor's License," and also "contain the name of the company for which such solicitor is employed, and no other." It is made a misdemeanor for any person to act as solicitor for any insurance company without having first procured such license, or to solicit "for any company other than the one named in such license."

It is contended on behalf of the District that the Superintendent of Insurance having issued to appellant one solicitor's license, was not authorized to issue a second license empowering him to represent another company, the first license still being in force. In support of this contention the language of the Code is relied upon, as well as the interpretation that has been placed upon that language by the District authorities since its enactment.

As the chief justice observed in the opinion in the Drake Case, 30 App. D. C. 319, no power was conferred upon the Superintendent of Insurance "to make and enforce an interpretation of the laws relating to insurance companies, agents, or brokers. Such power is a judicial one, that can be exercised by the courts alone." This language is applicable to the present case. While an executive contemporaneous construction will usually be followed where the language of the statute is not clear, or admits of two reasonable interpretations. (United States ex rel. Daly v. Macfarland, 28 App. D. C. 563; Houghton v. Payne, 194 U. S. 88, 48 L. ed. 888, 24 Sup. Ct. Rep. 590), this rule of interpretation does not preclude an inquiry by the courts as to the correctness of a custom of a Department, when that custom is inconsistent with the language and object of the Statute. United States v. Finnell, 185 U. S. 236, 46

L. ed. 890, 22 Sup. Ct. Rep. 633. In other words, if no substantial support is found in the statute for the interpretation of the officers charged with its enforcement, courts will not hesitate to declare and effectuate the legislative will.

The question naturally arises whether Congress, having authorized an insurance agent or broker to represent any number of companies, intended to restrict the activities of a solicitor to one company. What considerations could have influenced Congress so to discriminate against solicitors? The only reason suggested is that Congress intended to prevent a solicitor from pretending to act for one company, "while in reality he was devoting his time and talents in obtaining business for that company's competitor in the same line." This argument, it seems to us, would apply with equal force to agents, and yet Congress has permitted one agent to represent different companies. Moreover, the object of such legislation is more for the protection of the general public. While the imposition of the license fee provides revenue, the requirement that the solicitor obtain a license protects the public against irresponsible persons who are really not authorized to represent anyone. There are many reasons for believing that no such discrimination was intended or effected. It is well known that few of the larger risks are assumed by a single company. This is the reason why an insuance agency to be successful must represent a line of companies. Congress was dealing with a practical, and not a theoretical, question. Under the contention of the District, the agent must either personally write all the larger risks, or send several solicitors to write a single risk, for no solicitor may do business for any company unless licensed to do so. Under the contention of appellant, a solicitor may represent as many companies as may employ him, provided he obtains a separate license in each case. These licenses are of record, of course, and if it is desired to retrict a solicitor to one company, a contract to that effect may be entered into between the parties immediately affected.

Sec. 655, when considered in connection with the preceding section relating to agents and brokers, and in the light of con-

ditions that must have been known to Congress, is quite free from ambiguity. It is expressly provided that one company or agent may employ more than one solicitor. The provision that the particular license shall contain only the name of the company by which the holder of the license is employed simply means that the solicitor must obtain a license for each company he represents. An agent must pay $50 for a general license; a solicitor $5 for each particular license. While an agent may represent a score of companies, he probably seldom represents more than half that number. The activities of a solicitor will probably be even more restricted. But these are considerations that address themselves to the parties immediately interested, and, as we read the statute, that in no way affect the public. We conclude, therefore, that, in the circumstances of this case, it was the plain duty of the Superintendent of Insurance to receive the fee tendered by appellant, and issue to him the license for which he applied.

It follows that the judgment must be reversed, with costs, and the cause remanded for further proceedings in harmony with this opinion.                    *Reversed and remanded.*