KIRTEN *v.* CHICOT COUNTY DRAINAGE DISTRICT.

Opinion delivered December 10, 1923.

1.   DRAINS—SPECIAL TERM OF CIRCUIT COURT.—Under Crawford & Moses' Dig., § 3607, providing that, if lands in a drainage district are in one county, the county court shall have power to establish the district, but, if the lands are in more than one county, the application shall be addressed to the circuit court of either county, and § 3647, providing that "the county and circuit court may, at the request of the commissioners of the district, at any time, hold special sessions for the purpose of acting upon any petition or report, or making any order in a matter involving any drainage district," *held* that the circuit court has jurisdiction to hold a special term, not only where it has formed a drainage district, but also to hear an appeal from the county court questioning the correctness of drainage assessments.

2.   DRAINS—SPECIAL TERM OF COURT.—Where, upon appeal to the circuit court from an order of the county court refusing to set aside a drainage benefit assessment, the appeal was, by consent, continued until the next term, the court had jurisdiction to hear the appeal at a special term held before the next regular term; the order for continuance merely excusing further attendance upon this court.

Appeal from Chicot Circuit Court; *Turner Butler,* Judge; affirmed.

*Wm. Kirten, pro se.*

This drainage district being wholly in Chicot County, the circuit court was without original jurisdiction thereof, and had no power to call a special term to try matters relating to the same.   C. & M. Digest, §§ 3607, 3647.

*Carmichael & Hendricks,* for appellant.

1.   The circuit court lost jurisdiction by making the order of continuance.   37 Pac. 548, 551; 2 Okla. 180; 85 Ark. 200; C. & M. Dig., §§ 1270, 1272; *Id.* §§ 6290, 2211, 2218, 1325.

2.   Crawford & Moses' Digest, § 3647, applies to the organization and formation of districts, and not to the procedure after they are organized.   It does not give the circuit court power to hold a special term of court upon the petition of the commissioners of the district.   The evident meaning of the statute is that the county court shall act when the district is wholly within one county, and that the circuit court shall act when the district includes lands within two or more counties.   See the act, of which this section, § 3647, is § 15.   Acts 1913, p. 748; also § 21, and § 1, at page 742, and § 2; C. & M. Dig. § 3607.

*N. B. Scott, J. G. Gillison* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

This court has settled the question as to the validity of statutes such as C. & M. Digest, § 3647, in favor of its validity.   135 Ark. 196; 150 Ark. 157; 159 Ark. 298.   The statute authorizes the circuit court to meet for the purpose of "making *any* order in a matter involving *any* drainage district;" and that is equivalent to saying "*every possible* order."   Century Dict., "Any."   The concluding sentence of § 3638, C. & M. Digest, as printed, is meaningless.   In the original act it reads:   "And this act shall apply to the organization of districts, the main object *of which is the construction of levees.*"   The purpose and intent of the entire act is to hasten proceedings leading up to reclamation work.   See §§ 3644, 3636, 3615, 3617, as well as the section 3647 in question.   If the case was continued to the next term, that fact would not prevent its being called up at a special term called and held for that purpose.

HART, J.   This appeal questions the jurisdiction of the circuit court to hold a special term to consider an appeal from the judgment of the county court assessing benefits upon the lands of William Kirten, situated in the Chicot Drainage District.

It appears from the record that the Chicot Drainage District was created by act No. 405 of the Acts of the

General Assembly of the State of Arkansas of 1920, and that it has elected to become a drainage district under the general drainage acts of 1909.

Under the statute, certain landowners in the drainage district, including William Kirten, filed in the county court their written objections to the assessment of benefits made against their lands, and asked that the assessment be set aside as illegal and void for the grounds stated in their petitions. The county court found against their contention, and refused to set aside the assessment of benefits made against their lands. Judgment was entered accordingly, and the petitioners appealed to the circuit court.

At the March term, 1923, of the Chicot Circuit Court, by consent, the appeals from the county court above referred to were continued for the term. On June 18, 1923, the commissioners of the Chicot Drainage District presented a petition to the judge of the circuit court, setting forth grounds for the calling for a special term of the circuit court to consider the appeals taken by the landowners from the judgment of the county court refusing to set aside the assessment of benefits made against their lands.

After conferring with the attorneys representing both parties, and after due consideration of the petition, the circuit judge of the Chicot Circuit Court ordered the circuit court to convene in special session at nine o'clock on Wednesday, the first day of August, 1923, for the purposes set out in the petition. It was also ordered that the clerk should spread the order of record and docket all of the cases referred to in the petition, and issue subpoenas to all parties to the suit, and the petitioners were required to give notice of the order to attorneys representing litigants in the suits. This order was signed by the circuit judge on June 18, 1923. On the first day of August, 1923, the circuit court was duly convened, and proceeded to call said cases for trial. The landowners appeared specially for the purpose of questioning the jurisdiction of the court to hold a special

term for trying the causes above set forth. Their plea to the jurisdiction of the court was overruled, and, after hearing proof in the matter and the argument of counsel, their appeals from the county court were dismissed.

The correctness of the decision of the circuit court as to its jurisdiction in the premises is the only question presented for review in this court. As we have already seen, the drainage district perfected its organization under the general drainage statutes, notwithstanding it was originally created by the special act of the Legislature. The special term of the circuit court was called pursuant to the provisions of § 3647 of Crawford & Moses' Digest, and is a part of our statutes under the title of "Alternative System of Drainage Districts." The section reads as follows: "The county and circuit court may, at the request of the commissioners of the district, at any time hold special sessions for the purpose of acting upon any petition or report, or making any order in a matter involving any drainage district."

The principal reliance of appellant for a reversal of the judgment is that the section in question does not refer to appeals from the county court questioning the correctness of the drainage assessments, but that it only refers to orders made by the circuit court in forming drainage districts.

Section 3607 provides that, if the lands in the drainage district are in one county, the county court shall have power to establish the district, and that, if the lands in the drainage district are in more than one county, the application shall be addressed to the circuit court of either county, and all proceedings shall be had in such circuit court.

It is claimed that, when this section is construed in connection with § 3647, the latter section only gives jurisdiction to the circuit court where the drainage district is situated in two counties and the application to create the district is made in the circuit court. We do not agree with counsel in this contention. The language

of the section does not carry on its face any such limitation or restriction, and we do not see any reason for placing such limitation upon the section, because jurisdiction for the formation of the district is given to the county court where the lands in the drainage district are situated in one county, and in the circuit court where the lands in the drainage district are in more than one county. The original drainage act in question, which is called "An Alternative System of Drainage Districts," in force at the time of its passage, was enacted by the Legislature in 1909. See Acts 1909, p. 829. This act was amended by the Legislature of 1913. See Acts of 1913, p. 738.

Section 15 of that act provides for special sessions in county and circuit courts in certain cases, and is § 3647 of the Digest.

The evident purpose of the section was to facilitate the establishment of drainage districts, and the hearing of the appeals upon the assessment of benefits is just as much a part of the formation and organization of the district as the other proceedings. The language of the section is broad enough to include appeals from the judgment of the county court in the matter of assessing benefits, and we can perceive no reason for limiting its scope in that respect.

In the absence of some language of a qualifying nature, we feel constrained to hold that the language of the statute is broad enough to include appeals like the one in this case. The concluding part of the section is very broad, and provides for a special session of the county and circuit court for making any order in a matter involving any drainage district.

Again, it is insisted that the circuit court could not acquire jurisdiction on appeal, because, by consent of the parties at the March term, 1923, the cases had been continued until the next regular October term of the court. We cannot perceive how the consent to a continuance until the next term could give either party

any greater rights in the premises than could be secured by a continuance by operation of law or by reason of the court having adjourned for the term without trying the cases. The only object of entering an order continuing cases by consent is that the parties may be excused from further attendance upon the court. In other words, the court might set aside the order, upon proper notice, and try the cases at that term of the court. If such course was not pursued, and court should be adjourned for the term, the order for a continuance amounts to no more than if the cases had been continued by operation of law because they had not been reached on the calendar before the end of the term.

In this connection it may be stated that a statute authorizing the county judge to hold a special term of the county court when the good of the county demands it, has been held valid, and is a power to be exercised largely in the discretion of the county judge. *Wilmans* v. *Bordwell,* 73 Ark. 418.

Again, it was held that the Legislature may pass a statute prescribing that a court shall be open at all times for the transaction of business of an urgent character, and that the act of the judge in vacation in such cases is the act of a court. *Wilmot Road Imp. Dist.* v. *DeYampert,* 159 Ark. 298.

The special session of the circuit court in question was held pursuant to the statute, after due notice to all interested parties, and we are of the opinion that the authority for holding the special session is included in the phrase, "or making any order in a matter involving any drainage district."

It follows that the judgment will be affirmed.